**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
NORFOLK DIVISION

UNITED STATES OF AMERICA,

v.   CRIMINAL ACTION NO: 2:05CR85

LARRY SCOTT AGNOR,
    DEFENDANT.

## OPINION AND ORDER

Defendant's Motion (Doc. 19) to Suppress the Fruits of a Search of 1153 West Road, Chesapeake, Virginia, came on for hearing on September 20, 2005.  The Court ruled from the bench DENYING the motion.  This Opinion and Order more fully explains the Court's ruling.

On June 24, 2005, a grand jury in the United States District Court for the Eastern District of Virginia, Norfolk Division, charged Larry Scott Agnor [hereinafter "Defendant"] with the following: (Count 1) Conspiracy to manufacture, distribute, and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846; (Counts 2 and 3) Possession with intent to distribute and Distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and (C); (Count 4) Possession of pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(1), 802(33) and 18 U.S.C. § 2; (Count 5) Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); (Count 6) Drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); (Count 7) Possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d), 5841, and 5871; and (Count 8) Opening and maintaining any place for the manufacture and distribution of methamphetamine, in violation of 26 U.S.C. § 856(a)(1).  See Doc. 17.  The

charges stem from the September 29, 2003, search of 1153 West Road, Chesapeake, Virginia.[1]

## A. Factual Background

Detective B.K. Woolever swore an affidavit in support of a warrant to search 1153 West Road on September 17, 2003 [hereinafter "Aff."].  A City of Chesapeake Circuit Court Judge authorized the search warrant at 11:35 a.m. on the same day.  Three confidential informants [hereinafter "CS1", "CS2", and "CS3", respectively] were the primary sources of the material facts constituting probable cause for the search.

In his motion, Defendant contends that probable cause did not exist to authorize the search.  Defendant challenges each of the confidential informants, alleges that Detective Woolever included misleading information in the affidavit in support of the warrant, and argues that stale information was included in the affidavit.

## B. Law

The United States Court of Appeals for the Fourth Circuit found that in order to establish probable cause the facts presented to a  magistrate need only "warrant a [person] of reasonable caution in the belief" that contraband or evidence of a crime will be found in the place to be searched.  Simmons v. Poe, 47 F.3d 1370, 1378-1379 (1995).  When considering the sufficiency of a finding of probable cause by a magistrate, a reviewing court must employ a highly deferential standard of review.  Id.  This requires a determination of whether the magistrate had a "substantial basis" for his conclusion that probable cause existed.  Id.  When making this determination, a court may consider only the information presented to the magistrate who issued the warrant.  United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990).

---

[1]There appears to be some confusion as to the date of the search.  In the first paragraph of Defendant's Motion, he refers to a September 23, 2003, search.  Elsewhere in the motion, and in both the Affidavit in Support of an Arrest Warrant and the Government Response to the Motion to Suppress, the date used is September 29th.

2

Probable cause itself is simply a showing of a "probability or substantial chance of criminal activity . . . ," Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983), and the likelihood "that contraband or evidence [of that criminal activity] is located in a particular place." Id. at 230. A "totality-of-the-circumstances" test is used to measure the showing of probability. Id. at 238. When information provided by an informant is part of the showing, the informant's "veracity, reliability, and basis of knowledge are highly relevant." United States v. Miller, 925 F.2d 695, 699 (4th Cir. 1991) (citing Illinois v. Gates; and Alabama v. White, 496 U.S. 325 (1990)). However, "they are simply factors to be considered in examining the total information." Id. "[T]he degree to which [information] is corroborated is an important consideration." United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993), cert. denied, U.S. , 126 L. Ed. 2d 436 (1993).

**C. Analysis**

At the hearing, the Government offered the 1153 West Road Search Warrant and Affidavit in Support into evidence without opposition. See Government Exhibit A. Neither party offered any additional evidence; instead, both chose to rest on the briefs they had submitted previously and argument.

Ground 1

Defendant contends that CS1's statement is unreliable because there is no factual recitation of how CS1 obtained the information. CS1's states that he "knew" Larry was making and selling methamphetamine on West Road, but, according to Defendant, does so in a conclusory fashion. Mot. Suppress at p. 2.

From the affidavit, it appears that CS1 began speaking with Detective B.K. Woolever in March, 2003, about methamphetamine activities in Chesapeake. Aff. at p. 2. He told Detective

3

Woolever that an individual named Larry, who had previously been charged with a methamphetamine offense, was making and selling methamphetamine from his house on West Road. Aff. at p. 3.

Police Records show that Larry Agnor was arrested and charged with methamphetamine conspiracy in 2002. Aff. at p. 2. Police Records also show that a Larry Agnor, D.O.B. 11/21/1952, lives at 1153 West Road. Aff. at p. 3. Thus, the police were able to corroborate two aspects of CS1's identification of Defendant.

### Ground 2

Defendant claims that CS2's statement is likewise unreliable because it does not indicate when or how CS2 came to know what he professes to know. Furthermore, Defendant characterizes CS2's information as generic, because it did not indicate who was making the methamphetamine or where the methamphetamine was being stored. Mot. Suppress at p. 2.

Detective Woolever swore that, in the summer of 2003, CS2 told him that he had heard of an individual who lived on West Road who was involved in the manufacture of methamphetamine; however, he did not know the individual's name or address. Aff. at p. 3.

This information, received later in time than CS1's tip, fits with the information previously gathered about Defendant and 1153 West Road. Furthermore, Detective Woolever swore that CS2 had previously provided information to the Chesapeake Police Department and that CS2's prior information had been verified. Aff. at p. 6.

### Ground 3

Defendant objects to CS3 for the same reason that he objected to CS1 and CS2: there is no indication that CS3 ever saw any of the activities he described or purchased methamphetamine from the premises of 1153 West Road. Mot. Suppress at p. 2.

4

According to Detective Woolever's affidavit, CS3 provided information to Detective Woolever from July - September, 2003. Against his penal interest (Aff. at p. 6), CS3 indicated that he was familiar with a house on West Road where methamphetamine was being manufactured and used; that Larry and his son, Robbie, manufacture methamphetamine from one or more of the outbuildings behind the house where Larry lives; that another individual, known as John, who lives down the road from Larry, is involved in the manufacture of methamphetamine with Robbie; and that John drives a black, full-size vehicle, possibly a late model Chrysler 4 door. Aff. at p. 3.

Police Records show that a Robert Agnor, D.O.B. 1/17/1981, lives at 1153 West Road. Id. Detective Charles Minehart conducted aerial surveillance of 1153 West Road in August, 2003. Id. The aerial surveillance confirmed the presence of outbuildings, mobile homes, and trailers behind the property. And, a black full-size vehicle was parked behind one of the mobile homes. Id. Furthermore, surveillance of the 1100 block of West Road identified a black Chrysler parked in the driveway of 1109 West Road. The vehicle, a 1993 Chrysler 4 door, is registered to John Michael Robinson, Jr. Aff. at p. 4. Finally, Detective Woolever swore that CS3 had provided information to the Chesapeake Police Department previously and that CS3's information had been verified.

The Court FINDS that the police were able to independently verify aspects of the information provided by each source. In addition, the individual tips form a consistent, overlapping outline of a conspiracy to manufacture and distribute methamphetamine.

The precise details of the manufacturing process underway were discovered on September 16, 2003, when Detective Woolever conducted a "trash pull" from the trash deposited across the street from 1153 West Road. Aff. at p. 4. The trash contained U.S. Mail addressed to "Robert

5

Agnor, 1153 West Road," id., which indicates that the trash came from the occupants of 1153 West Road. The trash also contained 6 empty boxes of pseudoephedrine; a receipt indicating the purchase of two boxes of pseudoephedrine; plastic tubing; 1 plastic funnel partially wrapped with aluminum foil; 2 cans aerosol automobile cleaner; and strips of aluminum foil with signs of being exposed to fire. Id. Based on his training and experience, Detective Woolever swore that all of the items, with the exception of the aluminum foil strips, are used to produce methamphetamine. The aluminum foil strips are used to consume methamphetamine. Id.

Defendant disagrees with Detective Woolever's assessment and claims that the items found in the trash are legal items from which no inference of unlawful activity can be drawn. Defendant's contention is unavailing. As the Supreme Court observed in Illinois v. Gates, "innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands." 462 U.S. at 245.

### Ground 4

The Defendant suggests that the affidavit in support of the search warrant was misleading in that it did not disclose that federal charges, which were brought against the Defendant in 2002, were dismissed on the motion of the U.S. Attorney. Mot. Suppress at p. 1. This amounts to a claim that exculpatory information was omitted from an affidavit for a search warrant. Analyzing a similar claim, the Fourth Circuit reasoned that "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official misconduct than a failure to include a matter that might be construed as exculpatory." United States v. Barefoot, 1991 U.S. App. LEXIS 29757, 11-12 (4th Cir. 1991) (unpublished) (citing United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)). When the latter has occurred,

suppression is only permissible if inclusion of the omitted material would have defeated probable cause. Id. That is not the situation here. The reference to the 2002 charges for methamphetamine conspiracy simply corroborated CS1's tip that a person who had been previously charged "with methamphetamine" was making and selling methamphetamine from his house on West Road. Aff. at p. 3. The Court FINDS that the disposition of the charges does not change the fact that Defendant was charged and, thus, fit the description made by CS1, nor would inclusion of the exculpatory information have altered the probable cause determination.

Ground 5

The Defendant characterizes the information in the affidavit as stale because it relates back to 1993. Mot. Suppress at p. 2. The Court observes that the affidavit does indicate that "Larry Agnor [] has been investigated by the Chesapeake Police Department, vice and narcotics section, dating back to 1993." Aff. at p. 3. The Fourth Circuit has advised that "staleness" becomes an issue in two different ways. See United States v. McCall, 740 F.2d 1331, 1335-1336 (4th Cir. 1984). Defendant argues that this case present facts which fall into the second context, where the warrant itself is suspect because the information on which it rested is too old to furnish "present" probable cause. Id.

However, the Defendant complains of no evidence in particular and, except for the one reference to 1993, none of the material facts establishing probable cause are old. Therefore, the warrant does not rest upon stale information. Even if it did, the doctrine of staleness prevents a court from finding probable cause based *solely* on stale information. When old information is combined with new information, it may become "an appropriate basis for a probable cause determination when viewed in light of relatedly suspicious behavior." United States v. Ramsburg, 114 Fed. Appx. 78, 82 (4th Cir. 2004). Here, the Court FINDS that the source

information was gathered, and the surveillance occurred, within six months of the application for a search warrant. Thus, Defendant's staleness argument fails.

As noted *supra*, the Court employs a deferential standard when reviewing a state court judge's authorization of a search warrant. Simmons v. Poe, 47 F.3d at 1378-1379. Even absent that deference, the Court would have issued a search warrant had the Court been presented the same information as that put before the City of Chesapeake Circuit Judge. In the affidavit submitted in support of the search warrant, Detective Woolever details the efforts made to corroborate the tips from CS1, CS2, and CS3. With respect to each source, the police were able to independently verify aspects of the information provided. Combined, the source information and police surveillance present a substantial likelihood that evidence of criminal activity would be found at 1153 West Road. Because the Court FINDS that probable cause did exist for the issuance of the search warrant, Defendant's motion to suppress the fruits of the search is DENIED.

## CONCLUSION

For the reasons discussed in this Opinion and Order, Defendant's Motion to Suppress the Fruits of a Search of 1153 West Road, Chesapeake, Virginia, is **DENIED**.

The Clerk is REQUESTED to send a copy of this order to all counsel of record.

It is so ORDERED.

/s/
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 22, 2005